(914 P.2d 956)
No. 71,738

HOME BUILDERS ASSOCIATION OF GREATER KANSAS CITY, *et al.*, *Appellees*, v. JOHNSON COUNTY WATER DISTRICT NO. 1, *et al.*, *Appellants*.

Opinion filed March 24, 1995.

*Wilson E. Speer* and *Randy R. McCalla*, of Speer, Austin, Holiday & Zimmerman, of Olathe, for the appellants.

*Mark E. Jones*, of Polsinelli, White, Vardeman & Shalton, of Overland Park, for the appellees.

Before BRISCOE, C.J., PIERRON, J., and RON ROGG, District Judge, assigned.

ROGG, J.: Home Builders Association of Greater Kansas City, *et al.*, (Home Builders) filed an action for declaratory judgment and injunction against Johnson County Water District No. 1, *et al.* (District). The trial court granted summary judgment for Home Builders, and District appealed. We reverse and remand for further proceedings.

The issues raised on appeal concern the propriety of granting summary judgment. The trial court determined that no genuine issue of material fact was in controversy. This conclusion was based on the court's interpretation of K.S.A. 19-3514 and K.S.A. 19-3516(d). District is the only existing improvement district to which these statutes apply.

The core issue between Home Builders and District is the bidding practices of District on private developer-initiated water main extensions. Home Builders asserts that District utilizes bidding practices which violate the two statutes previously noted. The claim is that substantially higher costs result and are passed on to the patrons of District.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994). Simply put, "[s]ummary judgment is proper where the only question or questions presented are questions of law." *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993). The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party

against whom the ruling is sought. Upon review, this court applies the same test. See *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306, 756 P.2d 416 (1988).

*Does K.S.A. 19-3516(d) require each line extension under K.S.A. 19-3514 to be bid competitively as a separate "contract"?*

K.S.A. 19-3514 provides in part: "Upon application for water main extensions and full compliance with the rules and regulations by the applicant, the board shall cause to be constructed such extensions which shall become the property of the water district." K.S.A. 19-3516(d) provides in part:

"All contracts for any construction of all or part of the water system, or for repairs, extensions, enlargements or improvements to any such water supply and distribution system created under this act, the cost of which exceeds $25,000 shall be awarded on a public letting by the water district board to the lowest responsible bidder . . . ."

Resolution of this question hinges on the interpretation of the foregoing statutory provisions. Statutory construction is a question of law, *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992), over which this court's review is unlimited. See *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986). When ascertainable from the statutory language, the intent of the legislature governs. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). Further, "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expresed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

Rather than publicly bid each individual project as a separate contract, District's practice is to submit one contract per year for public bid, having estimated what its needs will be for water main extensions and other pipe installations over the one year. District then awards the annual contract to one contractor. Whatever private developer applications are made for extensions are then dealt with as part of that single annual contract. Home Builders contends that each line extension should be separately bid and that K.S.A.

19-3516(d) does not permit aggregation of line extension projects in one contract for construction.

The trial court found that District's bidding practice of aggregating projects was prohibited under the statute and granted summary judgment. We come to a different conclusion than the trial court. The court should give such an interpretation as gives the legislature's intended effect. *U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources*, 247 Kan. 519, 524, 802 P.2d 516 (1990). We interpret the words "contracts for any construction" to mean the contract made with the construction firm doing the contracted work. That contract can be for one or more separately identified and initiated projects. Aggregation of several projects into one "contract for any construction" is not prohibited by statute.

Because aggregation of projects into one construction contract can occur, a public bid-letting to the lowest responsible bidder under District's rules, regulations, and practices could legally occur. There remains a disputed factual question as to whether the present practice of District in granting an annual contract for all construction to one firm results in substantially higher costs to consumers than a different bidding practice might. The stipulations and undisputed facts leave in question a genuine issue as to what could be a material fact. The trial court did not reach this issue because of its reliance on its interpretation of the statute prohibiting the aggregation of projects. We reverse the granting of summary judgment based on our interpretation that K.S.A. 19-3516(d) does not prohibit the aggregation of projects.

We will address other disputed legal issues raised by the parties to assist the parties and the district court in the resolution of this matter upon remand.

*Does K.S.A. 19-3516(d) apply to developer-initiated line extension contracts?*

District argues that 19-3516(d) applies only to contracts initiated by the water district board. It contends that the bid-letting requirements do not apply to private developer-initiated extension contracts. The first sentence in 19-3516(d) provides:

"The water district board, by a majority vote of the members thereof, may contract for repairs, alterations, extensions or improvements of the water supply and distribution system and issue revenue bonds to pay the cost thereof without submitting to a vote of the electors of such water district the proposal to contract for the making of such repairs, alterations, extensions and improvements and to issue revenue bonds to pay the costs thereof."

The second sentence in 19-3516(d) establishes the bidding requirement. District's argument is essentially that because this bidding requirement is contained in a provision with the above sentence, it necessarily only applies to board-initiated construction contracts. This interpretation might be reasonable if not for the clear language of the statute.

K.S.A. 19-3514 provides that when an applicant applies for a water main extension, "the board shall cause to be constructed such extensions which shall become the property of the water district." The section does not set out the way in which the board must cause the extensions to be constructed. Presumably, the extensions can be constructed by crews of the water district or the district may contract with an independent contractor to construct the extension. While the first sentence of 19-3516(d) does permit the issuance of revenue bonds to fund the project, it does not require it. The projects can be funded by a private developer. Under the second sentence, all contracts (regardless of whether they are board- or developer-initiated) must be submitted for public bidding. If the legislature had intended to limit the public bidding procedure to board-initiated contracts, it could easily have replaced the term "all" to attain that result. The clear language of the statute should govern over the placement of the bidding requirement language. The bidding requirement contained in 19-3516(d) applies to board- and developer-initiated contracts alike.

*Do the words "cost" or "costs" used in K.S.A. 19-3516(d) and in K.S.A. 19-3514 include materials as opposed to only labor expense?*

"Cost" or "costs" are not defined by the legislature in this context.

Defining "cost" as encompassing expense for both labor and materials seems to be in consonance with the Kansas definition of "costs" in other contexts. See *Mallon v. City of Emporia*, 11 Kan.

App. 2d 494, 496-97, 726 P.2d 1354 (1986); K.S.A. 12-6a01(d) ("cost" is defined to include "materials, labor and other lawful expenses"). In addition, pursuant to 19-3514, the applicant is responsible for the "cost" of the construction. District's expectation it would be reimbursed for the costs of materials as well as labor seems to support a definition of "cost" which includes both material and labor expenses. To conclude that "cost" contemplates all expenses when payment on the contract is concerned, but only labor for the purpose of applying the bidding requirement; runs counter to the principle that statutory provisions be interpreted consistently. See *Guardian Title Co. v. Bell*, 248 Kan. 146, 151, 805 P.2d 33 (1991) (several provisions of an act, in pari materia, must be construed together with a view of reconciling and bringing them to workable harmony and giving effect to the entire statute if it is reasonably possible to do so).

The result that follows from the bid letting requirement of 19-3516(d) applying to 19-3514 is to require materials to be included when determining the necessity of a public letting of a construction contract. A public bid letting for stockpiling material purchases is not required by the statute.

Reversed and remanded for further proceedings.

PIERRON, J., concurring in part and dissenting in part: I agree with all portions of the court's opinion except that which would seem to exclude from the requirement of public bidding the costs of materials which are stockpiled ahead of time and used in the contracts in question. I believe the materials used should be subject to the same requirement of public bidding as are the labor costs.