No. 45,815

The Elwood-Gladden Drainage District of Doniphan County, Kansas, *Appellee*, v. Lawrence H. Ramsel, et al. (In the matter of the Appeal of Andrew Staudenmaier and Anna Staudenmaier), *Appellants*.

(476 P. 2d 696)

Opinion filed November 7, 1970.

G. T. *Van Bebber*, of Troy, argued the cause and was on the brief for appellants.

*Robert A. Reeder*, of Troy, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: This appeal arises out of eminent domain proceedings commenced in the district court of Doniphan County. The condemnor, The Elwood-Gladden Drainage District, is a levee and drainage district which constructed an agricultural levee to protect lands lying along the west bank of the Missouri River in Doniphan County.

The appellants, Andrew Staudenmaier and his mother Mrs. Anna Staudenmaier, are the owners of two separate tracts of land identified in the eminent domain proceedings as tracts 17 and 21. Being

dissatisfied with the award of the appraisers appointed by the district court, and on June 11, 1965, they duly perfected two separate appeals to the district court for trial *de novo* on the question of damages, and demanded trial by jury in each case. The facts and issues in both appeals being the same, the district court ordered the appeals consolidated for purposes of trial as to just compensation.

On October 11, 1968, a pretrial conference was held on the consolidated appeals by the district court in chambers, with counsel for the parties and the court reporter present. The appellee drainage district orally raised the issue of settlement of the landowners' claims of damage and sought a determination of that issue. The issue of settlement was defined by counsel for the parties in chambers, and thereafter the district court conducted a trial on the issue of settlement in the courtroom. The record shows that "both parties announcing ready for trial, the cause proceeds to the Court, sitting without a jury." Statements by counsel were made, each side introduced evidence, cross-examined witnesses, and counsel announced they had nothing further to offer. Oral argument to the district court was waived, and the court announced, "I will go over these notes and I will decide this within the next couple of days and if I decide the appeal has not been settled, then I will set it down for a pre-trial within a few days so it will not delay trial."

On October 16, 1968, the district court made findings of fact and conclusions of law that the cases had been settled by the parties, and entered its order dismissing each landowner's appeal. The findings of fact and conclusions of law in both appeals read:

"The Court finds that at the beginning of the pre-trial conference the question was raised by the Elwood-Gladden Drainage District that these cases had been settled and these appeals should be dismissed.

"Evidence was introduced on this question and the Court finds Mr. Davis, an engineer for the Corps of Engineers asked the attorney for the landowner if he could have permission to talk to the landowner in regard to the reason for his appeal. The attorney gave Mr. Davis this permission.

"Mr. Davis approached the landowner and asked him what would be necessary to satisfy him, so that his appeal would be dismissed. The landowner suggested several changes in the plans. He requested two additional ramps, a change in the borrow pit, he requested that an approach that was built by the contractor to be used in the construction of the levee be left. Ordinarily this approach would have been removed.

"Mr. Davis asked the landowner if these requests were complied with would his appeals then be dismissed and he stated they would.

"The plans were revised by the Corps of Engineers to satisfy the landowner's request. Tubes were purchased by the Drainage District; additional land was purchased by the Drainage District upon a nearby hill for a borrow pit.

"After this work was completed Mr. Davis asked the landowner if he was now satisfied and he said that he was, and Mr. Davis asked him if the appeals would be dismissed and the objections to the Commissioners report and he stated that the appeals would be dismissed and the objections to the Commissioners report.

"Mr. Davis asked him if he should advise his attorney what the landowner said, and he said I wish you would on your way through town.

"Mr. Davis did stop at the office of the attorney for the landowner and advised him of the conversation he had with the landowner.

"The Court finds that the settlement and agreement in these two appeals were entered into and was consummated and the appeals in these two cases are hereby dismissed."

The appellant-landowners filed a motion to set aside and modify the findings of fact, or in the alternative, to grant them a new trial. The motion was overruled, and this appeal followed.

The appellants first contend the district court erred in finding there had been a settlement of the appeals when the issue of settlement was not specifically raised or brought before the court by any proper pleading. We think no error was committed. The appeals were perfected pursuant to K. S. A. 26-508. The only issue to be determined was that of just compensation to be paid for the land or right taken and other damages. In *City of Wellington v. Miller*, 200 Kan. 651, 438 P. 2d 53, we said:

". . . The provisions of K. S. A. 26-508, providing that the appeal shall be 'tried as any other civil action,' applies to the presentation of the facts and not to the formation of the pleadings. The eminent domain statute forms the issue. The only issue to be determined shall be that of just compensation for the land or right taken and other damages, and the appeal brings the issue of damages to all interests in the tract before the court for trial *de novo*. (K. S. A. 26-508.) The statute takes the place of pleadings." (l. c. 652.)

Assuming, as the appellants argue, but in no sense deciding, that the issue of settlement was a new issue other than the assessment of damages which must be properly pleaded, they made no objection to the absence of pleadings and proceeded to outline and define the issue of settlement in chambers. When trial on that issue commenced in the courtroom, they made no objection to the absence of pleadings, but proceeded to trial on the merits and introduced evidence addressed to the question of settlement. Under such circumstances, we must give effect to the settled rule that when the parties with the assent of the court, unite in trying a case on

the theory that a particular matter was within the issues, the contention cannot subsequently be made that the issue was not available because not pleaded. (59 A. L. R. 2d Anno: pp. 238, 250, 41 Am. Jur., Pleading, § 393, p. 563.) We conclude the district court had jurisdiction to try the issue of settlement defined by the parties and raised by the evidence to which there was no objection. (*Bowen, Administrator v. Lewis,* 198 Kan. 605, 612, 426 P. 2d 238.)

The appellants next contend the issue of settlement was an ultimate issue in the appeals pending in the district court and that it was error for the court to decide that issue when the appellants had requested trial by a jury on all issues.

Reduced to its simplest terms, the question presented is: Should the appellants be granted a new trial so that the issue of settlement, determined adversely to them by the district court after a full trial, may now be redetermined by a jury?

The transcript of the proceedings had in the district court has been filed with the clerk of this court and that transcript, as well as the record on appeal, has been carefully studied. Factors to be considered as to whether the evidence introduced before the district court should be redetermined by a jury, include their original request for a jury trial on the issue of adequacy of compensation. Other and more important factors include the appellants' notice of approximately one year that the appeals had been settled by agreement; their letting the case proceed to trial by the court upon the issue of settlement; their submitting the question of settlement to the court without asking for a jury; their appearing at the trial before the court in the absence of a jury without objection; the introduction of evidence, including their evidence, and their failure to make any demand for jury until the motion for a new trial. The authorities hold that such conduct is at least a waiver of jury trial by implied consent. The appellants may not complain of rulings or matters to which they have consented, or take advantage of error upon appellate review which they invited, or in which they participated. (47 Am. Jur. 2d, Jury, § 62, p. 680, § 81, p. 696, § 84, pp. 698, 699; 30 C. J. S., Eminent Domain, § 281 c, pp. 36, 37, § 361, pp. 336, 337, § 372 [5], p. 407.)

In addition, the record shows the appellants, if not expressly at least by implication, orally stipulated in open court to proceed to trial on the issue of settlement and dismissal of their appeals by the court sitting without a jury (K. S. A. 60-239 [*a*] [1]), notwithstand-

ing the fact they previously demanded trial by a jury on all issues. In *Cunningham v. City of Iola,* 86 Kan. 86, 119 Pac. 317, the appellants made no objection to trial by the court and made no demand for a jury, but after a full trial an exception was taken to the judgment. It was held the appellants waived the right to a jury and could not on appeal be heard to complain. In the opinion it was said:

"The complaint that a counterclaim was considered and passed upon without the intervention of a jury, and in an injunction suit, is fully answered by the fact that no objection or request for a jury appears to have been made. There was an exception to the judgment, but this was too late . . . It was expressly decided in *The State v. Cutler,* 13 Kan. 131, that where the parties try an action before a judge at chambers without any objection or exception to the action of a judge in trying the case without a jury, they will be held to have waived a jury trial. The general rule is that the waiver may be by any conduct or acquiescence inconsistent with an intention to insist on a jury trial. (24 Cyc. 154.) The plaintiffs are presumed to have known their rights, and having failed to assert them at the proper time they cannot be heard to do so now." (l. c. 92.)

In *Udgaard v. Schindler,* 75 N. D. 625, 31 N. W. 2d 776, the defendants raised the issue of a jury trial for the first time upon a motion for a new trial, and it was held they could not voluntarily submit the issues of the case to a court without a jury, and hold in reserve their claim of a right to a jury trial in the event the decision should go against them.

As indicated, when the pretrial conference commenced, the issue of settlement of the appeals was raised. That would have been an appropriate time for the appellants to request that pleadings be filed and to insist that the issue be submitted to a jury. Instead, they were present personally and accompanied by witness—apparently prepared for trial—and took part in a contested trial to the court on the question of settlement, all without any objection or demand for jury. After the evidence was in, they waived argument and the court announced it would decide the matter in a few days. When the appellants received an adverse decision, they demanded a jury trial and requested that pleadings be filed. If the matter had merit prior to trial and an adverse judgment, it has no merit on appellate review. See *Conner v. Hammer,* 201 Kan. 22, 439 P. 2d 116.

The appellants argue there was no substantial evidence to sustain the district court's finding that settlement of the cases had been entered into by the parties. The point is not well taken.

The transcript and the record disclose ample evidence to sustain the finding there had been a settlement of the cases, and the appellants agreed to the dismissal of their appeals.

The evidence of the drainage district consisted chiefly of the testimony of Sidney Davis, a civilian employee of the Corps of Engineers, and Bearl Webb, a construction representative of the Corps. Davis testified concerning negotiations he had with Andrew Staudenmaier, and Webb testified concerning Staudenmaier's satisfaction with the completion of the project. Davis testified he contacted counsel for the appellants and secured his consent to talk to Staudenmaier about proposed changes in the project necessary to satisfy the appellants. He also contacted counsel for the drainage district and the board about the matter.

Davis conferred with Staudenmaier three different times; the first time in August, 1965. He reported their conversations to Staudenmaier's counsel as he went through Troy. In their first conversation, Staudenmaier advised Davis he would be interested in talking about the levee area. Davis asked him specifically what would have to be done to make the project acceptable to him. He stated the borrow area would have to be reduced and moved toward the river, and that additional levee crossings would have to be provided for access. Davis stated the Corps would study the matter and he would confer with Staudenmaier later.

The Corps determined the borrow area on Staudenmaiers' property could be reduced, but to compensate for the reduction, it would be necessary for the drainage district board to secure a hillside borrow which would have to be purchased by the board. Thereafter, Davis conferred with Staudenmaier and advised him the borrow area could be reduced and moved riverward, also that two additional ramps over the levee would be constructed on the appellants' land. Davis testified on direct examination as follows:

"Q. And again, did Mr. Staudenmaier indicate to you this was satisfactory and his appeal would be dismissed and the objections to the commissioners report as you stated?

A. Yes, he did and on the last visit I asked if I should advise his attorney and he said, 'I wish you would,' and on the way through town I did at that time advise Mr. Van Bebber of the conversation I had with Mr. Staudenmaier.

"Q. Did you also advise the Drainage District?

"A. Yes, I did, and advised them of the exact terms of the settlement on the basis of the map, and Mr. Staudenmaier did not want any reduction allowed by the Commissioners, even though the settlement was made on less acreage than originally condemned."

At the trial, the district court asked two questions of Mr. Davis: "Was there some hill-side land purchased and used for borrow pits?" and, "Was that done because of the release of the borrow pit from Mr. Staudenmaier's land?" Both questions received affirmative answers. The evidence showed the drainage district paid $2,500 for the hillside borrow area and that it fully complied with the terms of the settlement agreement. The record clearly shows the appellants accepted the terms of the settlement and that they were carried out to Mr. Staudenmaier's satisfaction in all respects. In *Connor v. Hammer*, supra, it was said:

"The law favors the compromise and settlement of disputes and when parties, in the absence of any element of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. . . ." (l. c. 24.)

Other points raised by the appellants have been fully considered and suffice it to say the record reflects a fair and equitable settlement was knowingly and understandingly entered into by the parties. The changes to be made were fully completed to the satisfaction of the appellants. It is to be regreted that the terms of the settlement were not reduced to writing by counsel—had this been done, obviously this litigation would not have occurred. Be that as it may, the absence of such a written stipulation does not lessen the legal requisites of the district court's finding based upon substantial evidence.

The judgment of the district court is affirmed.