NOT DESIGNATED FOR PUBLICATION

No. 117,542

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFF H. BROOKS,
*Appellant*,

v.

KINCAID COACH LINES, INC. and BERKSHIRE HATHAWAY
HOMESTATE INSURANCE CO.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed October 13, 2017. Affirmed.

*Daniel L. Smith*, of Ankerholz and Smith, of Overland Park, for appellant.

*Stephen P. Doherty*, of Hoffmeister, Doherty & Webb LLC, of Overland Park, for appellees.

Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.

PER CURIAM: Jeffrey H. Brooks appeals from the order of the Kansas Workers Compensation Board (the Board) denying his claim for workers compensation benefits on the basis his employer did not have adequate notice of injury. He argues: (1) that the Board erroneously interpreted and applied K.S.A. 2016 Supp. 44-520; and (2) that the Board's determination was not supported by substantial evidence. For the reasons set forth below, we reject these arguments. Accordingly, we affirm.

Jeffrey H. Brooks worked as a mechanic for Kincaid Coach Lines, Inc. As part of his work duties, he would occasionally have to lift heavy objects which would cause

1

strain to his back and arms. On January 15, 2013, Brooks was repairing a bus door when it fell on him, pinning him between the door and a trash can. He experienced back pain as a result of the accident and reported it to his supervisor, Seth Hankins, the following day. He did not seek medical treatment at that time.

On September 7, 2013, Brooks was replacing a bus alternator, which weighed approximately 100 pounds. As he lifted the alternator, he felt a sharp pain running down his right leg. He completed his shift and went home but was unable to lay down that night due to his pain. He called Hankins the following day and requested medical treatment for his back pain but did not specifically tell him about the incident with the alternator. Hankins authorized Brooks to seek medical treatment. Brooks went to the emergency room at the Olathe Medical Center complaining of back pain. He advised the hospital staff of his January 2013 injury but did not mention the incident with the alternator. He stated his back had bothered him since the January 2013 injury. The following day Kincaid directed him to its medical provider, Concentra, for further treatment. He was diagnosed with right lumbar radiculopathy and lumbar strain and was referred to physical therapy. According to the medical notes, Brooks stated he was injured when the bus door fell on him.

Brooks received further medical evaluation and had an MRI taken, revealing moderate to severe spinal canal stenosis and a bulging lumbar disc between his L4-L5 vertebrae. He was referred to a neurosurgeon for further evaluation. On October 9, 2013, Brooks filed an application for hearing with the Division of Workers Compensation indicating the date of accident as September 7, 2013. On October 10, 2013, Brooks and Hankins filled out an injury report, indicating the date of injury as January 15, 2013.

Brooks received additional medical evaluations on October 15, 2013, and May 21, 2014. Both of the evaluating doctors believed the January 2013 incident may have contributed to his pain but the September 2013 incident was a distinct cause of his disc

2

herniation. A preliminary hearing was held in front of an administrative law judge (ALJ). The ALJ found Brooks met his burden of proving the September 7, 2013, accident was the prevailing factor in causing his injury and need for medical treatment. Nevertheless, the ALJ found Brooks failed to give Kincaid timely notice of the injury and denied him benefits.

Brooks timely appealed the ALJ's preliminary order to the Board. The Board affirmed the ALJ's decision. Brooks was subsequently evaluated in July 2015 and January 2016. The evaluating doctors opined he had five percent permanent partial impairment because of the January 2013 incident and 10-12 percent partial permanent impairment because of the September 2013 incident.

A new hearing was held before an ALJ regarding both dates of injury. The ALJ determined Brooks' January 2013 injury was compensable and awarded him based on five percent permanent partial impairment. The ALJ again found Brooks met his burden of proving the September 7, 2013, accident was the prevailing factor in causing his injury and need for medical treatment; however, because he failed to give Kincaid timely notice of the injury, he was denied benefits. Brooks timely appealed to the Board. The Board affirmed the ALJ's finding that Brooks failed to give Kincaid timely notice of his September 2013 injury. Brooks timely appealed to this court.

Brooks argues the Board erroneously interpreted and applied the notice provision of K.S.A. 2016 Supp. 44-520. He further argues the Board's decision was not supported by substantial evidence.

*Standard of Review*

Appellate courts have limited power of review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. Under K.S.A. 2016 Supp. 77-621(d), the court must consider the record as a whole, including the relevant evidence which detracts from the agency's findings. The court may not reweigh the evidence or engage in de novo review of an agency's factual findings. *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009). The court may only grant relief if one or more of the enumerated circumstances in K.S.A. 2016 Supp. 77-621(c) are present:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

*The Board Did Not Err in Interpreting or Applying K.S.A. 2016 Supp. 44-520.*

Resolution of Brooks' claim turns on the interpretation of the notice provisions of K.S.A. 2016 Supp. 44-520. Interpretation of a statute is a question of law over which

4

appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015). K.S.A. 2016 Supp. 44-520 states, in pertinent part:

"(a)(1) Proceedings for compensation under the workers compensation act shall not be maintainable unless notice of injury by accident or repetitive trauma is given to the employer by the earliest of the following dates:

"(A) 20 calendar days from the date of accident or the date of injury by repetitive trauma;

"(B) if the employee is working for the employer against whom benefits are being sought and such employee seeks medical treatment for any injury by accident or repetitive trauma, 20 calendar days from the date such medical treatment is sought; or

"(C) if the employee no longer works for the employer against whom benefits are being sought, 10 calendar days after the employee's last day of actual work for the employer.

"Notice may be given orally or in writing.

"(2) Where notice is provided orally, if the employer has designated an individual or department to whom notice must be given and such designation has been communicated in writing to the employee, notice to any other individual or department shall be insufficient under this section. If the employer has not designated an individual or department to whom notice must be given, notice must be provided to a supervisor or manager.

"(3) Where notice is provided in writing, notice must be sent to a supervisor or manager at the employee's principal location of employment. The burden shall be on the employee to prove that such notice was actually received by the employer.

"(4) The notice, whether provided orally or in writing, shall include the time, date, place, person injured and particulars of such injury. It must be apparent from the content of the notice that the employee is claiming benefits under the workers compensation act or has suffered a work-related injury.

"(b) The notice required by subsection (a) shall be waived if the employee proves that: (1) The employer or the employer's duly authorized agent had actual knowledge of the injury; (2) the employer or the employer's duly authorized agent was unavailable to receive such notice within the applicable period as provided in paragraph (1) of subsection (a); or (3) the employee was physically unable to give such notice."

5

The statutory definitions of "accident" and "injury" are set forth in K.S.A. 2016 Supp. 44-508 as follows:

"(d) 'Accident' means an undesigned, sudden and unexpected traumatic event, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. An accident shall be identifiable by time and place of occurrence, produce at the time symptoms of an injury, and occur during a single work shift. The accident must be the prevailing factor in causing the injury. 'Accident' shall in no case be construed to include repetitive trauma in any form.

. . . .

"(f)(1) 'Personal injury' and 'injury' mean any lesion or change in the physical structure of the body, causing damage or harm thereto. Personal injury or injury may occur only by accident, repetitive trauma or occupational disease as those terms are defined."

Brooks argues the Board erroneously conflated notice of injury with notice of accident and, therefore, incorrectly interpreted and applied K.S.A. 2016 Supp. 44-520. He correctly points out the statutory distinction between accident and injury as defined in K.S.A. 2016 Supp. 44-508. He is also correct that the notice provision of K.S.A. 2016 Supp. 44-520 requires notice of injury, as opposed to notice of accident. Nevertheless, he is incorrect in asserting the ALJ and the Board found he was required to give notice of accident, as opposed to notice of injury. Both held he failed to give adequate notice of injury and found complaints of pain do not necessarily constitute notice of an injury. The record does not support Brooks' claim that the Board erroneously interpreted or applied the law.

6

*The Board's Decision was Supported by Substantial Evidence.*

Brooks argues the Board erred in determining Hankins' testimony was not credible. He further claims that the Board failed to consider substantial material facts. He argues that the Board could not make a credibility determination regarding Hankins' testimony because the Board did not observe live testimony. In support of his argument, he cites to *Hudson v. Kansas Public Employees Retirement System Bd.*, 53 Kan. App. 2d 309, 388 P.3d 597 (2016). His reliance on *Hudson* is misplaced.

In *Hudson*, the Board found Hudson's claim lacked credibility because the employer's expert witness attacked Hudson's credibility and the credibility of his treating physicians. The Board, however, failed to point to any independent basis for its finding. 53 Kan. App. 2d at 318. Here, the Board pointed to inconsistencies between Hankins' testimony on direct and cross-examination and inconsistencies between his deposition testimony and an earlier written statement. It also compared Hankins' testimony and written statement to Brooks' testimony and the statements in his medical records regarding the date and cause of his injury. The Board did not expressly state Hankins' testimony lacked credibility, it merely found "[c]laimant's testimony and the medical records suggest that Mr. Hankins' recollection of events, almost three years later, may have faded." The Board's consideration of Hankins' testimony was appropriate under the circumstances and its findings are supported by substantial evidence in the record.

Brooks further argues that the Board ignored substantial uncontroverted evidence. He again cites to *Hudson*, 53 Kan. App. 2d 309, Syl. ¶ 5, for the proposition that "[i]t is an unreasonable and arbitrary act when uncontroverted evidence is not considered." He is correct that it would be unreasonable and arbitrary for the Board to fail to consider uncontroverted evidence. Nevertheless, he is incorrect in his assertion that the Board failed to consider:  (1) Brooks told Hankins his back pain was related to work activities;

7

(2) Brooks had back pain prior to September 7, 2013, which significantly worsened thereafter; (3) Brooks requested his employer send him for treatment for his pain; (4) Hankins understood Brooks' request for medical treatment related to back pain from his work activities; and (5) Brooks' employer sent him for treatment in response to his complaints of back pain.

Brooks' contentions are unfounded. Although the Board may not have stated those considerations in the same terms Brooks uses in his brief, they were addressed in the Board's decision. The Board acknowledged that Brooks had experienced increased back pain in the two weeks before his September 7, 2013, accident. It further acknowledged that he requested treatment from his employer for pain related to his work activities before visiting the Olathe Medical Center on September 8, 2013. It also discussed the fact he was sent to his employer's medical provider, Concentra, for further treatment on September 9, 2013. Brooks' contentions are unsupported by the record. Because the Board's order reflects it considered the facts Brook points to in his brief, his argument that the Board ignored substantial uncontroverted evidence is fatally flawed.

Affirmed.